CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED for
Rha
APR 18 2006
JOHN F. CORCORAN, CLERK
BY: HMcDonoala
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

|  |  |  |
|---|---|---|
| FERNANDO S. ARMSTEAD, | ) | |
| Plaintiff, | ) | Civil Action No. 7:06cv00201 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| DANIEL A. BRAXTON, et al., | ) | |
| Defendants. | ) | **By: Jackson L. Kiser** |
| | ) | **Senior United States District Judge** |

Plaintiff Fernando S. Armstead, a Virginia inmate proceeding pro se, brings this action pursuant to 42 U.S.C. § 1983, with jurisdiction vested under 28 U.S.C. § 1343. In his complaint, plaintiff alleges that while incarcerated at Red Onion State Prison he has been forced to endure numerous violations of his First, Eighth, and Fourteenth Amendment rights. As relief, Armstead seeks $ 45,000 in damages, the expungement of his institutional disciplinary record, and a transfer to another institution. The court finds that Armstead's complaint fails to state a claim upon which the court may grant relief and, therefore, dismisses the suit pursuant to 28 U.S.C. § 1915A(b)(1).

## I.

Armstead alleges that on April 2, 2004, following his complaint about Correctional Officer J. Fleming, several correctional officers entered his cell and scattered his personal papers on the floor. Armstead complains that following the incident, he began to reorganize his belongings and determined that 38 stamps, ten photographs, two magazines, and seven sheets of carbon paper were missing. Armstead alleges he filed several grievances related to this incident, but his grievances were initially denied and his appeals to these decisions "mysteriously" disappeared.

Armstead then claims that on April 26, 2004, he was given a evening meal which did not contain any meat or bread. Plaintiff alleges that he complained about the meal and eventually

returned the meal tray. However, he avers that as a result of a correctional officer's lies regarding the incident, he was charged with a disciplinary infraction for failing to obey a direct order to immediately return the meal tray. Plaintiff was subsequently convicted for failure to obey an order and was sentenced to a thirty day loss of television privileges and was placed on a "loaf" diet for seven days.

Armstead next alleges that on January 1, 2005, as he was being transferred from his cell to the shower and then from the shower back to his cell, he was forced to listen to racial slurs and epithets. He claims that once he was returned to his cell, as his handcuffs were being removed, Correctional Officer Powers "snatched the leash" attached to his cuffs, causing his hands to hit the cell door. Armstead further alleges he requested emergency medical attention, but Powers refused to process his request. However, Armstead has not made any specific allegation of injury or voiced any complaints of persistent pain, nor does he allege he made further requests for medical attention. Once again, Armstead complains that his grievances and letters complaining of this incident were denied and/or ignored.

Plaintiff also alleges that in February, 2005, he was charged and convicted for two additional disciplinary infractions; in both instances, Armstead was charged with failing to obey a direct order to exit his cell. As a result of his subsequent convictions on these charges, Armstead was sentenced to 10 days and 20 days isolation, respectively. Armstead claims these were false and retaliatory charges; however, he admits that he refused to obey these orders, because he was fearful of leaving the confines of his cell.

Finally, Armstead alleges that he is being unfairly held in a disciplinary segregation unit and, as a result, is afforded less phone calls, commissary privileges, and education opportunities. He also

complains that his current place of incarceration is more than three hundred miles from his family.

## II.

A petition may be dismissed under 28 U.S.C. § 1915A(b)(1) if it is clear from the petition that the plaintiff is not entitled to relief. To state a cause of action under § 1983, a plaintiff must establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that such deprivation is a result of conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42 (1988). However, a complaint filed by an inmate challenging the conduct of an "officer or employee of a governmental entity" may be dismissed under 28 U.S.C. § 1915A(b)(1) if the complaint is "frivolous, malicious or fails to state a claim upon which relief may be granted."

### A.    Lost Property

Armstead alleges that on April 2, 2004, for retaliatory reasons, correctional officers entered his cell and scattered his personal belongings on the cell floor. He further alleges that as he was reorganizing his belongings he determined 38 stamps, ten photographs, two magazines, and seven sheets of carbon paper were missing. Armstead attributes the missing property to the correctional officers' "rough-shod" treatment of his belongings.

The intentional or negligent deprivation of personal property by a prison employee acting outside the scope of official policy or custom does not rise to the level of a constitutional violation, so long as the state provides an adequate post-deprivation remedy. See Hudson v. Palmer, 468 U.S. 517 (1984); Parratt v. Taylor, 451 U.S. 527 (1981). Given that the conduct is unauthorized, it would be impracticable for the state to provide a pre-deprivation hearing or other process. Hudson, 468 U.S. 517 (1984). Therefore, an adequate post-deprivation remedy, such as a prison grievance procedure or a state tort claim, suffices. Id. The state has established Division Operating Procedures and a

grievance procedure of which Armstead could avail himself for relief. Furthermore, other state law remedies, including the Virginia Tort Claims Act, were available to Armstead as a means to seek compensation for his alleged loss. See Wadhams v. Procunier, 772 F.2d 75 (4th Cir. 1985); Ballance v. Young, 130 F.Supp.2d 762, 767 (W.D. Va. 2000). Accordingly, inasmuch as Armstead had adequate state remedies, I find that he has failed to state a cognizable constitutional claim regarding his lost or missing property.

## B.    Diet Complaints

Inasmuch as Armstead's allegation that on April 26, 2004, his evening meal lacked adequate meat and bread servings and/or that his placement on a restricted, loaf diet in response to his complaints regarding the missing components of his meal can be construed as a living conditions claim, it must fail. While the Eighth Amendment does protect prisoners from cruel and unusual living conditions, an inmate is not entitled to relief simply because of exposure to uncomfortable, restrictive, or inconvenient conditions of confinement, for, "[t]o the extent that such conditions are restrictive or even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). As a result, in order to state a claim of constitutional significance regarding prison conditions, a plaintiff must demonstrate not only that the living conditions violated contemporary standards of decency, but also that prison officials acted with deliberate indifference to such conditions. Wilson v. Seiter, 501 U.S. 294 (1991). Moreover, plaintiff must allege facts sufficient to show either that he has sustained a serious or significant mental or physical injury as a result of the challenged conditions or that the conditions have created an unreasonable risk of serious damage to his future health. Strickler v. Waters, 989 F.2d 1375,

4

1380-1381 (4th Cir. 1993); Helling v. McKinney, 509 U.S. 25 (1993).

While the food Armstead alleges to have been served may not have been to his liking, he admits that only one meal was missing a meat and bread portion and that he was placed on a restricted diet for a short period of time. Moreover, he has not alleged or even suggested that because of the missing food components or his later restricted diet, he has sustained a serious or significant injury or is at risk of a future injury. Accordingly, Armstead has failed to state a claim of constitutional significance under the Eighth Amendment.

### C.     Verbal Abuse and Excessive Force

Armstead alleges that on January 1, 2005, he was forced to listen to racial slurs and then, as his handcuffs were being removed through the cell door tray slot, Correctional Officer Powers "snatched the leash" attached to his cuffs, causing his hands to hit the cell door. As noted above, the Eighth Amendment protects individuals against inhumane treatment and excessive force while imprisoned. See U.S. Const. amend. VIII. However, verbal abuse and harassment by guards, without more, does not state a constitutional claim. See Cullins v. Cundy, 603 F.2d 825 (10th Cir. 1979) (holding that the Sheriff's actions in laughing at and threatening to hang the plaintiff were not sufficient to show the deprivation of a constitutional right); Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir. 1985) (calling an inmate an obscene name did not violate constitutional rights); Keyes v. City of Albany, 594 F. Supp. 1147 (N. D. N.Y. 1984) ("[T]he use of vile and abusive language [including racial epithets], no matter how abhorrent or reprehensible, cannot form the basis for a 1983 claim."). Accordingly, I find that Armstead's allegations of verbal abuse do not state a constitutional deprivation.

5

To establish an Eighth Amendment excessive force claim, an inmate must satisfy a two-pronged standard comprised of both an objective inquiry (whether the harm plaintiff suffered was sufficiently serious enough to amount to a constitutional violation) and a subjective inquiry (whether the defendant acted with a sufficiently culpable state of mind). Williams v. Benjamin, 77 F.3d 756, 761 (4th 1996).

The subjective component of an excessive force claim requires an inmate to demonstrate that the force used by an institutional official, "inflicted unnecessary and wanton pain and suffering." Hudson v. McMillian, 503 U.S. 1, 7 (1992). In evaluating such a claim, "the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" Id. (quoting Whitley v. Albers, 475 U.S. 312, 32-21 (1986)). The Supreme Court and the Fourth Circuit have set out the following factors to consider in determining whether a prison official acted maliciously and sadistically: "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Hudson, 503 U.S. at 7 (1992) (quotations omitted); Williams, 77 F.3d at 762. Also, the inmate must prove the correction official's actions were "'objectively harmful enough' to offend 'contemporary standards of decency.'" Stanley v. Hejirika, 134 F.2d 629, 634 (4th Cir. 1998) (quoting Hudson, 503 U.S. at 8). Although there is no requirement that an inmate suffer "serious" or "significant" pain or injury to demonstrate that a malicious or sadistic use of force was employed, he must allege "more than a de minimis pain or injury." Norman v. Taylor, 25 F.3d 1259, 1263 n. 4 (4th Cir. 1994). "[A]bsent the most extraordinary circumstances, a plaintiff cannot prevail on an

6

Eighth Amendment excessive force claim if his injury is de minimis." Taylor v. McDuffie, 155 F.3d 479, 483 (4th Cir. 1998). However, a de minimis physical injury may amount to an Eighth Amendment violation if the force used was of the sort "repugnant to the conscience of mankind." In Norman v. Taylor, the Fourth Circuit stated:

> We recognize that there may be highly unusual circumstances in which a particular application of force will cause relatively little, or perhaps no, enduring injury, but nonetheless will result in an impermissible infliction of pain. In these circumstances, we believe that either the force used will be "of a sort 'repugnant to the conscience of mankind,'" and thus expressly outside the de minimis force exception, or the pain itself will be such that it can properly be said to constitute more than de minimis injury.

25 F.3d at 1263, n. 4 (citations omitted).

Although Armstead claims that Powers jerked his "leash" causing his hands to hit the cell door and Powers refused to provide him with emergency medical treatment, Armstead does not allege he suffered any actual injury as a result of the incident. Nor does he allege he made any further requests for medical attention or suffered any ongoing pain or discomfort related to his hands hitting the cell door. Accordingly, I find that any injuries Armstead may have suffered as a result of his hands hitting the cell door are de minimis and do not amount to a constitutional violation.

Furthermore, even if Armstead had suffered something more than a de minimis injury, such injury would not have been the result of action repugnant to the conscience of mankind. "[N]ot...every malevolent touch by a prison guard gives rise to a federal cause of action." Riley v. Dorton, 115 F.3d 1159, 1167 (4th Cir. 1997). And merely a lack of due care for the prisoner's

7

interests and safety fails to show the use of force which is "repugnant to the conscience of mankind." See Whitley v. Albers, 475 U.S. 312, 319 (1986)(finding that the infliction of pain in the course of a prison security measure, does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense).

Armstead admits that Powers jerked his "leash" while removing his wrist restraints through the cell door tray slot. And, as the court finds that some movement and/or repositioning may be necessary to remove an inmate's restraints, I find that even if Powers "snatched" the leash, causing Armstead's hands to hit the cell door, that was not such an extreme use of force to be considered "repugnant to the conscience of mankind." Id; see Norman, 25 F.3d at 1263, n. 4.


### D.    Disciplinary Charges

Armstead alleges that in response to his complaints regarding correctional officers' allegedly improper conduct, he was subjected to retaliatory disciplinary charges. Specifically, Armstead challenges three charges for disobeying a direct order: one of which occurred in April, 2004 and the other two which occurred in February, 2005.

Although the Fourteenth Amendment does afford prisoners some due process rights, when a defendant is lawfully convicted and confined to jail, he loses a significant interest in his liberty for the period of the sentence. Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). Such confinement is necessarily subject to the broad discretion of those parties managing the jail. Id. However, the confinement does not strip the inmate of all of his liberty interests. Id. "These interests will be generally limited to the freedom from restraint which, while not exceeding the sentence in such an

8

unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). Changes "in a prisoners' location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate [and which] are contemplated by his original sentence to prison." Gaston, 946 F.2d at 343. Furthermore, such changes are necessarily functions of prison management that must be left to the broad discretion of prison administrators to enable them to manage prisons safely and effectively. Id.

In this case, Armstead fails to allege facts indicating that he has been deprived of any federally protected liberty interest without due process. Armstead alleges that he was falsely charged on three occasions for failing to obey a direct order and that the officers charging him with these infractions offered false testimony in support of the charges. An inmate is afforded procedural protections only when the loss of statutory good time credits or some other liberty interest is at issue. Wolff v. McDonnell, 418 U.S. 539, 557 (1974). As noted previously, a liberty interest arises when an atypical or significant hardship is imposed on the inmate. Sandin, 515 U.S. at 484. As a result of his three convictions for failing to obey a direct order, Armstead was sentenced cumulatively to only a thirty day loss of television privileges and thirty days in isolation. Neither a loss of television privileges nor the imposition of disciplinary isolation amount to an atypical prison condition. Therefore, Armstead was not entitled to any procedural safeguards during those institutional hearings and, thus, has failed to raise an issue of constitutional magnitude as to those charges or subsequent convictions.

Additionally, to the extent that Armstead claims that there was insufficient evidence to convict him of an institutional infraction related to the events on April 26, 2004 and in February,

2005, can be raised under the Due Process Clause, they too must fail. Federal courts will not review the accuracy of a disciplinary committee's finding of fact. Kelly v. Cooper, 502 F. Supp. 1371, 1376 (E.D. Va. 1980). Such findings will only be disturbed if they are unsupported by any evidence or are wholly arbitrary and capricious. Smith v. Rabalais, 659 F.2d 539, 545 (5 th Cir. 1981), cert. denied, 455 U.S. 992 (1982). Although Armstead claims these charges were falsely made and retaliatory in nature, he admits that a correctional officer offered testimony that on April 26, 2004, Armstead refused to return his meal tray after being ordered to do so and that in February, 2005, on two separate occasions, he refused to obey direct orders to leave his cell and shower. Accordingly, it is clear that there was sufficient evidence on which to convict Armstead on each disciplinary infraction.

### D. Grievance System

Armstead also makes numerous allegations regarding the defendants failure to process and/or log his grievances. Inasmuch as a state grievance procedure does not confer any substantive right upon prison inmates, a prison employee's failure to comply with the state's grievance procedure is not actionable under § 1983. Adams v. Rice, 40 F.2d 72 (4th Cir. 1994). Accordingly, any delay or failure to respond to or process Armstead's complaints does not raise a claim of constitutional magnitude.

### E. Segregation

Finally, Armstead makes a general allegation that his continuing confinement in segregation constitutes cruel and unusual punishment under the Eighth Amendment and is a violation of the due process rights afforded under the Fourteenth Amendment.

As noted above, to establish an Eighth Amendment living conditions claim, Armstead must

10

allege facts sufficient to show either that he has sustained a serious or significant mental or physical injury as a result of the challenged conditions or that the conditions have created an unreasonable risk of serious damage to his future health. Strickler v. Waters, 989 F.2d 1375, 1380-1381 (4th Cir. 1993); Helling v. McKinney, 509 U.S. 25 (1993). While isolation and segregation conditions, and the emotional difficulties plaintiff alleges he has suffered, may be inconvenient and unfortunate, he has not alleged anything to suggest that these conditions violate contemporary standards of decency. Nor has plaintiff demonstrated that because of the conditions he has sustained a serious or significant injury or is at risk of a future injury. Therefore, he has failed to state a constitutional claim under the Eighth Amendment.

Likewise, Armstead has failed to establish that his continued placement in segregation has deprived him of a constitutionally protected liberty interest. Armstead has merely been placed in a disciplinary housing unit at the discretion of prison administrators. And, as institutional housing assignments are necessarily left to the broad discretion of prison administrators to enable them to manage prisons safely and effectively, such an assignment does not raise a claim of constitutional magnitude. See Gaston, 946 F.2d at 343.

## III.

Based on the foregoing, I find that Armstead has not presented any claims on which relief can be granted. Therefore, I will dismiss the complaint without prejudice pursuant to 28 U.S.C. § 1915A(b)(1).

The plaintiff is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 30 days of

11

the date of entry of this Order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk is directed to send certified copies of this memorandum opinion and accompanying order to plaintiff and to counsel of record for the defendants, if known.

ENTER: This 18th day of April, 2006.

Senior United States District Judge